UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCOS CALCANO, on behalf of himself and all other persons similarly situated,

                        Plaintiff,

- against -

THE FINISH LINE, INC.,

                        Defendant.

**OPINION AND ORDER**

19 Civ. 10064 (ER)

Ramos, D.J.:

Marcos Calcano, on behalf of himself and all other persons similarly situated, brought this action against The Finish Line, Inc. on October 20, 2019 for a violation of his rights under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law, and the New York City Human Rights Law. On March 6, 2020, Finish Line moved to dismiss the Complaint, in response to which Calcano filed an Amended Complaint on March 13, 2013. Now pending before the Court is Finish Line's motion to dismiss the Amended Complaint. For the reasons discussed below, Finish Line's motion to dismiss is GRANTED.

## I.    BACKGROUND[1]

Calcano is a legally-blind person who uses Braille to read written materials. Amend. Compl. ¶ 2. Calcano brings this action against Finish Line for its failure to sell store gift-cards with auxiliary aids and services, such as Braille. *Id.* ¶ 5. On October 29, 2019, Calcano alleges that he called Finish Line's customer service center to purchase a gift card which contained Braille. *Id.* ¶ 16. The customer service representative informed him that Finish Line did not sell

---

[1] The facts alleged in the Amended Complaint are taken as true for the purpose of this motion.

gift cards with Braille and did not offer Calcano any alternative auxiliary aids for the purchase of the gift cards. *Id.* ¶ 17. As a result, Calcano alleges that he could not purchase accessible gift cards from Finish Line. *Id.* ¶ 18.

In the Amended Complaint, Calcano alleges that he cannot access the information on the available gift cards like a sighted person could. *Id.* ¶ 5. Specifically, Calcano cannot complete a transaction with a gift card online or by phone because he cannot access the card number or the terms of the card without an auxiliary aid. *Id.* ¶¶ 6–7. Calcano alleges that if the gift cards were made available in Braille he could distinguish the gift cards, understand the terms of the card, know the unique card number, and learn the remaining balance. *Id.* ¶ 46. Calcano further alleges that Finish line does not have plans to sell gift cards with Braille and that implementation of auxiliary aids on the gift card would be neither difficult nor expensive. *Id.* ¶¶ 9–10.

## II.     DISCUSSION

Calcano seeks a permanent injunction to cause Finish Line to design, manufacture, and sell gift cards with auxiliary aids for the blind and visually impaired. *Id.* ¶ 10. This issue is not unique to the Court, nor to Calcano. Within the past year, numerous cases in the Southern and Eastern Districts of New York have raised the identical question: whether the ADA requires retail and service establishments to sell accessible gift cards. In each of those cases, including another case brought by Calcano, the Court has declined to find any merit to the argument. *See e.g.*, *Dominguez v. Banana Republic*, No. 19 Civ. 10171 (GHW), 2020 WL 1950496, at *1 (S.D.N.Y. Apr. 23, 2020); *Thorne v. Boston Market Corp.*, No. 19 Civ. 9932 (RA), 2020 WL 3504178, at *1 (S.D.N.Y. June 29, 2020); *Dominguez v. Taco Bell Corp.*, No. 19 Civ. 10172 (LGS), 2020 WL 3263258, at *1 (S.D.N.Y. June 17, 2020); *Calcano v. Art of Shaving – FL, LLC*, No 1:19 Civ. 10432 (GHW), 2020 WL 1989413, at *1 (S.D.N.Y. Apr. 27, 2020). Finish

Line argues that this action should likewise be dismissed because Calcano lacks standing and fails to state a cognizable claim for relief under the ADA.  Because this complaint suffers from the same pitfalls considered in the nearly identical cases cited above, *see, e.g.*, and because the Court finds the reasoning of those decisions persuasive, the motion to dismiss is granted.[2]  2020 WL 1950496, at *1.

### a. Standing

The court will dismiss a claim under Rule 12(b)(1) for failure to allege facts sufficient to establish standing under Article III of the Constitution.  *See Cortlandt Street Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  A plaintiff must "allege facts that affirmatively and plausibly suggest that it has standing to sue." *Banana Republic*, 2020 WL 1950496, at *2 (quoting *Id.* at 417).  "In assessing the plaintiff's assertion of standing, [the Court] accept[s] as true all material allegations of the complaint and … construes the complaint in favor of the complaining party."  *Hellas Telecomm.*, 790 F.3d at 417 (internal quotation marks omitted).  The court may also consider evidence outside the complaint. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

A plaintiff seeking to establish standing must allege "first, that it has sustained an "injury in fact" which is both "concrete and particularized" and actual or imminent; second, that the injury was in some sense caused by the opponent's action or omission; and finally, that a favorable resolution of the case is 'likely' to redress the injury." *Hellas TeleComm.*, 790 F.3d at 417 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (internal quotation

---

[2] Calcano argues that the *Banana Republic* decision should not be binding or influential on the Court because the decision is not final.  Doc. 38.  The *Banana Republic* plaintiff filed an appeal to the Second Circuit on May 11, 2020.

3

marks omitted).  Plaintiffs seeking injunctive relief must also identify a "real and immediate threat of future injury."  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004).  The Supreme Court has held that the threat must be "certainly impending to constitute an injury-in-fact and that allegations of possible future injury are not sufficient."  *Whitmore v. Arkansas*, 494 U.S. 149, 158 (1990)).

The Second Circuit has established that a plaintiff has standing in an ADA suit seeking injunctive relief "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location."  *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013).

The Court first considers whether Calcano has established an injury-in-fact under Title III of the ADA.  An injury-in-fact is found "where plaintiffs have encountered barriers at public accommodations and if they show a plausible intention or desire to return to the place but for the barriers to access."  *Banana Republic*, 2020 WL 1950496, at *5 (internal quotations omitted). Here, it is enough that Calcano alleges that he called Finish Line's service center to inquire about purchasing a Braille gift card and was told that the store does not stock Braille gift cards.  Amend. Compl. ¶ 16.  Calcano has, therefore, sufficiently alleged an injury-in-fact.  *See Banana Republic*, 2020 WL 1950496, at *5 (holding that plaintiff has alleged a sufficient injury in fact in alleging that defendant did not stock Braille gift cards).

Calcano alleges that Finish Line does not plan to start selling Braille gift cards.  Amend. Compl. ¶ 10.  This allegation is enough to satisfy the second element of the ADA standing requirement – that it is reasonable to believe the discrimination would continue.  *See e.g.*,

4

*Banana Republic*, 2020 WL 1950496, at *5 (stating that it is enough to meet the second element of the ADA standing requirement by simply alleging that the defendant does not plan to start selling Braille gift cards).

The third prong of the test, intent to return, is a "highly fact-sensitive inquiry" which considers "the proximity of the defendant's services, programs, or activities to the plaintiff's home and the frequency of the plaintiff's past visits" and "other factors relevant to the calculation of the plaintiff's intent to return such as occupation or demonstrated travel habits." *Bernstein v. City of New York*, 621 F. App'x 56, 59 (2d Cir. 2015). Calcano has not provided enough specific facts to demonstrate an intent to return. He has only alleged that he "intends to immediately purchase at least one store gift card" when they become available from Finish Line. Amend. Compl. ¶ 13. As in the instant case, the plaintiff in *Banana Republic* asserted that he had been a customer of the store on prior occasions and that there were many stores located around his residence and New York. *Banana Republic*, 2020 WL 1950496, at *6. As a result of the plaintiff's "generic, conclusory statements," the court refused to find that the plaintiff had plausibly plead that he intends to return to the store where he encountered the discrimination. *Id.* Here too, Calcano's statement that he would immediately buy a gift card with Braille is insufficient to satisfy the third element of the ADA standing requirement. *Id.* (concluding that allegations were "generic, conclusory statements" that do not demonstrate that plaintiff "owns several Banana Republic pieces already and wishes to continue compiling a collection with the help of a Banana Republic gift card"); *compare Taco Bell Corp.*, 2020 WL 3263258, at *2 (holding that "the nature of Taco Bell's business and the broader appeal and accessibility of its products," as compared with …clothing," is more plausible to find an intent to return); *Thorne*, 2020 WL 3504178, at *4 (finding standing where plaintiff argued that he had patronized the

5

defendant's restaurants in the past, lived within one block of the restaurant and intends on immediately purchasing a gift card when defendant restaurant sells gift cards that are accessible for the blind and visually impaired).

Calcano's New York State and New York City Human Rights Law's claims are governed by the same federal standards set out by the Second Circuit.[3] *Mendez v. Apple, Inc.*, No. 18 Civ. 7550 (LAP), 2019 WL 2611168, at *4. Therefore, Calcano fails to establish standing to bring those claims as well. In any event, having determined that Calcano has no standing to press his federal claim, this Court would decline to exercise supplemental jurisdiction over his state and city claims. *See* 28 U.S.C. § 1367(c)(3) (stating a district court "may decline to exercise supplemental jurisdiction over a claim [once it] has dismissed all claims over which it has original jurisdiction").

### b. Failure to State a Cognizable Claim Under the ADA

Even if Calcano had standing to sue, he has failed to state a cognizable claim under the ADA. Rule 12(b)(6) requires that a complaint allege sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 1974 (2007). In determining plausibility, the courts will consider a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

> "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice … Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

---

[3] Calcano agrees with that the New York claims are governed by the same federal legal principles. Response in Opp, Doc. 34 at 21–22.

*Id.* at 1949–50 (internal citations omitted).  A district court may consider the facts stated in the complaint, "documents appended to the complaint or incorporated in the complaint by reference," and "matters of which judicial notice may be taken."  *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations omitted).

Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  43 U.S.C. § 12182(a).  To state claim for violation of Title III of the ADA, a plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA."  *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94–95 (2d Cir. 2012).

Calcano presents the following arguments to allege a violation of the ADA:  (1) gift cards are a service which are entitled to auxiliary aids; (2) gift cards are similar to websites, which are places of public accommodation under the ADA; (3) Finish Line discriminated against him when it denied him a gift card with Braille.  Amend. Compl. ¶¶ 1–5.  None of these arguments are sufficient to state a claim under the ADA.  *Banana Republic,* 2020 WL 1950496, at *8; *see also Art of Shaving – FL, LLC*, 2020 WL 1989413, at *1; *Mendez v. Coach Services, Inc.*, No. 1:19 Civ. 11856 (GHW), 2020 WL 1989413 (S.D.N.Y. May 19, 2020).

As an initial matter, the Court disagrees with Calcano's contention that gift cards are an optional financial service, rather than goods.  Amend. Compl. ¶ 19.  "Gift cards are plainly the type of goods a business normally offers that need not be made accessible pursuant to Title III."

7

*Banana Republic,* 2020 WL 1950496, at *6; *see also Thorne,* 2020 WL 3504178, at *7 ("The most natural understanding of a gift card is therefore as a good.").[4]

Secondly, "[g]ift cards are neither public accommodations nor are they places." *Banana Republic*, 2020 WL 1950496, at *7–9. Title III of the ADA prohibits discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation" in connection with the goods and services "of [that] place of public accommodation." 42 U.S.C. § 12182(a). The statute lays out 12 categories of places of public accommodation and provides that "private entities are considered public accommodations ... if the operations of such entities affect commerce." *Id.* "[R]eading the words 'place of public accommodation' to include small slabs of plastic requires more than just a broad construction of Title III – it requires a rewrite of Title III entirely." *Banana Republic*, 2020 WL 1950496, at *9; *see also Throne,* 2020 WL 3504178, at *7–8 (rejecting plaintiff's argument that gift cards are a "place of public accommodation").[5]

Finally, because the Court concludes that gift cards are goods, Finish Line cannot be required to offer accessible gift cards which include Braille. The Department of Justice ("DOJ") has clearly stated that the ADA "does not require a public accommodation to alter its inventory

---

[4] In disputing that that gift cards are goods, Calcano cites to *Am. Council of the Blind v. Paulson, Sec'y of the Treasury*, 463 F. Supp. 2d 51 (D.D.C. 2006) for the proposition that a gift card is a prescribed form of currency and therefore, a service offered by a corporation. The court in *Paulson* held that the "Treasury Department's failure to design, produce and issue paper currency that is readily distinguishable to blind and visually impaired individuals violates § 504 of the Rehabilitation Act." *Id.* at 63. As an initial matter, *Paulson* was construing the Rehabilitation Act and not the ADA. *Id. Paulson* also does not describe the U.S. currency as a "service," nor does it reference gift cards at any point. *Id.*; *see also Thorne*, 2020 WL 3504178, at *8 ("Gift cards are – at best- an 'optional' financial tool.").

[5] Calcano attempts to analogize a gift card to a website. Amend. Compl. ¶ 19. This argument plainly fails because a gift card is a "good" and not a "space." *See Throne v. Boston Market Corp.*, at *8 ("A gift card does not offer a place to purchase a good or service. Instead, the gift card is itself the good that can be purchased at such place."); *Banana Republic*, 2020 WL 1950496, at *8 ("Put differently, a consumer can make a purchase with a gift card, but not on or in a gift card.").

to include accessible or special goods that are designed for, or facilitate use by, individuals with disabilities." 28 C.F.R. § 36.307(a); s*ee e.g., Banana Republic,* 2020 WL 1950496, at *7 ("[T]he plain text of the ADA and the Department of Justice's impending regulations make clear the exact opposite:  a retailer need not alter the mix of goods that it sells to include accessible goods for the disabled."); *Thorne*, 2020 WL 3504178, at *9 (holding that defendant is "not required to stock accessible goods, including accessible gift cards").

Calcano argues that Finish Line has denied him full and equal access to the gift cards. Amend. Compl. ¶¶ 41–43.  Under the ADA, a public accommodation discriminates when there is:

> [A] failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]

*Thorne*, 2020 WL 3504178, at *10 (citing 42 U.S.C. § 12182(b)(2)(A)(iii).  The regulations do not require the prescription of any particular auxiliary aid or service, rather they provide that "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. §36.303(c)(1)(iii).

In implementing these regulations, Finish Line is permitted flexibility in choosing what auxiliary aid or service to provide.[6]  28 C.F.R. §36.303(c)(1)(ii) ("The ultimate decision as to

---

[6] Calcano argues that reasonable accommodation is an affirmative defense when disputing whether the use of Braille is an appropriate auxiliary aid and service.  Calcano cites to *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp 2d 946 (N.D. Cal. 2006) and *Access Now, Inc. v. Blue Apron, LLC,* No. 17 Civ. 116 (JL), 2017 WL 5186354 (D.N.H. Nov. 8, 2017) to make this proposition.  As an initial matter, these cases do not involve gift cards but rather

9

what measures to take rests with the public accommodations, provided that the method chosen results in effective communication."); *see e.g. Thorne,* 2020 WL 3504178, at *11; *see also Banana Republic*, 2020 WL 1950496, at *fn. 8; *West v. Moe's Franchisor, LLC*, No. 15 Civ. 2846 (WHP), 2015 WL 8484567 (S.D.N.Y. Dec. 9, 2015). Calcano asserts that the Finish Line does not offer any alternative auxiliary aids or services beyond being denied a gift card with Braille. Amend. Compl. ¶ 11. However, similar to the facts of *Banana Republic*, Calcano never tried to discover whether Finish line could provide other auxiliary aids and services. *Id*. ¶ 16; *see Banana Republic*, 2020 WL 1950496, at *10. Therefore, Calcano has not plausibly plead that Finish Line fails to offer alternative auxiliary aids or services to assist the visually impaired.

### III. CONCLUSION

For the foregoing reasons, Finish Line's motion to dismiss is GRANTED. Calcano may file a second amended complaint, if at all, by November 9, 2020. If no amended complaint is filed within that time frame, the Clerk of the Court is directed to enter a final judgement of dismissal and directed to terminate the case. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 21 and 26.

It is SO ORDERED.

Dated: October 19, 2020
New York, New York

EDGARDO RAMOS, U.S. D.J.

---

websites. As numerous courts in this Circuit have found, websites are places of public accommodation which are distinguishable from gift cards. *See e.g.*, *Taco Bell Corp.*, 2020 WL 3263258, at *5; *Banana Republic*, 2020 WL 1950496, at *7.